STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-541

STATE OF LOUISIANA

VERSUS

NINA LAMBERT NEWTON

**********
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 16048-10
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell and J. David Painter, Judges.

**CONVICTIONS AFFIRMED; SENTENCE FOR ACCESSORY AFTER THE FACT TO FIRST DEGREE MURDER VACATED AND REMANDED FOR RESENTENCING WITH INSTRUCTIONS.**

John F. DeRosier, District Attorney
Carla S. Sigler, Assistant District Attorney
Karen C. McLellan, Assistant District Attorney
901 Lakeshore Street, Suite 600
Lake Charles, LA 70601
(337) 437-3400
**ATTORNEY FOR APPELLEE**
    State of Louisiana

Todd S. Clemons
Todd Clemons & Associates, APLC
1740 Ryan Street
Lake Charles, LA 70601
(337) 477-0000
**ATTORNEY FOR DEFENDANT/APPELLANT**
    Nina Lambert Newton

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Defendant, Nina Lambert Newton, is the mother of Sean and Brandon Newton. Sean, Brandon, Joshua Lambert (their cousin), and three friends became involved in a gang dispute at Prien Lake Mall. The two gangs continued their confrontation in a neighborhood behind the mall. The six young men were all in the Newtons' father's car and Sean Newton was driving. The boys drove through the neighborhood looking for the other gang. When they saw the men, Sean fired a gun from the driver's side window into the crowd. A fourteen-year-old girl who happened to be walking through the neighborhood was shot in the head. She died as a result of the gunshot wound. The six young men then drove to Lambert's house, hid the gun, and burned Sean's tee shirt. The two brothers and Lambert then went to the Newtons' house and told Defendant and her husband, Rodney Bernard Newton, about the shooting. Defendant attempted to cover up the drive-by shooting by concocting a story and lying to the police about her sons' and nephew's whereabouts at the time of the shooting. After giving false information to the police, Defendant recovered the gun and got rid of it.

Defendant was indicted on April 19, 2010, for obstruction of justice, a violation of La.R.S. 14:130.1, and accessory after the fact to first degree murder, a violation of La.R.S. 14:25. A jury trial commenced on May 16, 2011, and on May 24, 2011, the jury returned a guilty as charged verdict.

Defendant filed a "Motion for New Trial with Incorporated Memorandum." A hearing was scheduled for September 19, 2011. On September 19, Defendant argued why a new trial should be granted; however, the trial court denied the motion. After waiving all delays, Defendant was sentenced on the same date to ten years hard labor on the conviction for obstruction of justice, credit for time served, and five years hard labor on the conviction for accessory after the fact to first

degree murder, with credit for time served. The five-year sentence was ordered to be served concurrently with the ten-year sentence. Defendant filed a "Motion to Reconsider Sentence." Following a hearing, the trial court denied the motion on December 15, 2011.

Defendant has perfected a timely appeal, alleging her due process rights were violated when the State failed to disclose exculpatory evidence and that her sentences are constitutionally excessive considering the circumstances of her case.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find the following errors patent.

Defendant's sentence for accessory after the fact to first degree murder is indeterminate. Louisiana Revised Statutes 14:25 provides in pertinent part:

> Whoever becomes an accessory after the fact shall be fined not more than five hundred dollars, or imprisoned, with or without hard labor, for not more than five years, or both; provided that in no case shall his punishment be greater than one-half of the maximum provided by law for a principal offender.

The sentencing transcript indicates the trial judge did not designate whether this sentence was imposed with or without hard labor, thus rendering it indeterminate. Accordingly, Defendant's sentence for accessory after the fact to first degree murder should be vacated and the case remanded for resentencing with the trial court instructed to specify whether the sentence is to be served with or without hard labor. *State v. Roberson*, 06-1568 (La.App. 3 Cir. 5/2/07), 956 So.2d 736, *writ denied*, 07-1243 (La. 12/14/07), 970 So.2d 531.

We also find the record does not indicate that the trial court advised the Defendant of the prescriptive period for filing an application for post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform Defendant of the provisions of article 930.8 at resentencing.

# ANALYSIS

## *Assignment of Error Number One*

In her first assignment of error, Defendant asserts she suffered violations of her right to due process pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), when the State failed to disclose exculpating evidence prior to trial. She alleges the State failed to disclose inconsistent statements given by two witnesses, Joshua Lambert and Terri Brown, who testified at trial. She further contends the State failed to inform her that one of the boys in the car with Sean Newton when he fired the gun, Jarius Watson, was offered immunity in exchange for his testimony.

In *State v. Harper*, 10-356, pp. 8-12 (La. 11/30/10), 53 So.3d 1263, 1269-71 (alterations in original) (second omission in original), the supreme court discussed the *Brady* principle, as follows:

> In accordance with the due process clause of the Fourteenth Amendment to the United States Constitution, the State must disclose evidence which is favorable to the defense when "the evidence is material either to guilt or to punishment" or impeaches the testimony of a witness where "the 'reliability [or credibility] of a given witness may well be determinative of guilt or innocence.'" *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196-97; *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985*); see also, State v. Rosiere,* 488 So.2d 965, 970 (La.1986). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383; *see also Rosiere*, 488 So.2d at 970-71. Contrarily, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). "Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Bagley*, 473 U.S. at 675, 105 S.Ct. at 3380. Significantly, because the prosecution "alone can know what is undisclosed," it is "assigned the consequent responsibility to gauge the likely net effect of all such [favorable] evidence [unknown to the defense] and make disclosure when the point of 'reasonable probability' is reached." *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995).

. . . .

Nevertheless, the State's constitutional obligation to disclose exculpatory evidence does not relieve the defense of its obligation to conduct its own investigation and prepare a defense for trial as the State is not obligated under *Brady* or its progeny to furnish defendant with information he already has or can obtain with reasonable diligence. *State v. Kenner*, 05-1052, p. 2 (La.12/16/05), 917 So.2d 1081, 1081 (citing *United States v. Newman,* 849 F.2d 156, 161 (5th Cir.1988)); *see also, Michigan v. Harvey*, 494 U.S. 344, 348, 110 S.Ct. 1176, 1179, 108 L.Ed.2d 293 (1990) ("The essence of [defendant's] right [to assistance of counsel for his defense] . . . is the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial."). It follows, therefore, " '[t]here is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source, because in such cases there is really nothing for the government to disclose.' " *State v. Hobley*, 98-2460, p. 25 n. 10 (La.12/15/99), 752 So.2d 771, 786 (quoting *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir.1998)), *cert. denied*, 531 U.S. 839, 121 S.Ct. 102, 148 L.Ed.2d 61 (2000). As the United States Fifth Circuit Court of Appeal has noted:

> Regardless of whether the request was specific or general, and regardless of whether the evidence was material or even exculpatory, when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim.
>
> The constitutional requirement of due process mandates that the defendant have a right to a fair trial. The prosecutor's duty not to suppress material information favorable to defendant flows from his office as representative of the Government's interest in and due process obligation to justice. Truth, justice, and the American way do not, however, require the Government to discover and develop the defendant's entire defense. . . . In no way can information known and available to the defendant be said to have been suppressed by the Government.

*United States v. Brown*, 628 F.2d 471, 473 (5th Cir.1980) (citations omitted). Moreover, the State has, "of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor," and there is no corresponding "constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." *Agurs*, 427 U.S. at 106-09, 96 S.Ct. at 2399-2400; *see also Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972).

*Joshua Lambert*

Joshua Lambert testified at trial he was riding in the passenger front seat in the vehicle when Sean Newton fired a shot out the driver's side window into the group of men approaching the car. Lambert testified, after the shooting, they drove to his house, where the gun was hidden in a carport, and Sean Newton burned his tee shirt. During this time, one of the boys received a text telling them a little girl had been shot. The Newton boys and Lambert then went to Defendant's apartment where they told Defendant and her husband Sean had shot a little girl. In an effort to cover for the boys, Defendant immediately called the police and reported that the boys had been assaulted at the mall by a gang of men.

Officer Mark Chatman was dispatched to Defendant's apartment regarding her complaint that the boys were accosted by a group of men at the mall. Officer Chatman testified he was not there regarding the shooting of the young girl and no one was *Mirandized*. He stated Defendant did most of the talking, and she told him the boys had heard a shot as they left the mall. After Sean Newton asked the officer how the little girl was, the officer asked the Newtons, along with the boys, to go to the police station. The officer did not speak with them again after this initial meeting. He did state, while he was carrying a recording device at the time he talked to Defendant, he did not know if the device recorded the conversation or what became of the recording.

The following day, Defendant took Lambert back to his house where he retrieved the gun and gave it to her. When she returned to pick him up about forty-five minutes later, Lambert stated she told him not to worry about the gun--"It's gone."

Defendant argues in brief had she known of the inconsistent statements made by Lambert to Officer Chatman, she could have more properly prepared for her defense. "Most importantly, the defense could have used Lambert's testimony

to impeach him during cross examination. . . . Therefore, the fact that the State withheld Lambert's previous inconsistent statement, alone, is sufficient to prove that the [sic] Nina Newton was deprived of a fair trial."

Defendant refers to the following cross-examination of Officer Chatman regarding Lambert's alleged inconsistent and exculpatory statements:

Q. Okay. And when you went there, you spoke to Nina and Rodney Newton?

A. That's correct. I mainly spoke with Ms. Newton.

Q. Ms. Newton, right?

A. Yes.

Q. But you also spoke to Sean and Josh Lambert, correct, Sean Newton and Joshua Lambert?

A. No. Most of my conversation was with Nina Newton.

Q. Officer, I'm not asking about "most of your conversation." My question is very clear. Didn't--

A. Uh-huh (yes).

Q. –you speak to Joshua Lambert at his aunt and uncle's apartment on the night of March 27th of 2010?

A. Yes.

Q. Okay. And he told you that he was in some type of altercation with another group of guys near the mall, correct?

A. That's correct.

Q. He never told you that Sean Newton shot any gun that night, did he?

A. That's correct.

Q. He never—and you spoke with him, right?

A. That's correct.

Q. You (sic) never told you after the shooting he went by his apartment and Sean burned a shirt, did he?

A. No.

Q. Okay.

A. Uh-huh (yes).

Q. And he never told you that after the shooting, he went to his apartment and got rid of the gun, did he?

A. No.

Defendant contends the supposed inconsistent and exculpatory evidence was Lambert never told the officer Sean shot the victim, burned his shirt, or hid the gun. We note it is difficult to classify statements never made as non-disclosed inconsistent and exculpatory evidence. Lambert never made such statements because, as he explained at trial, Defendant concocted a story to tell the police in an attempt to cover up the boys' participation in the shooting of the victim, and everyone, including Lambert, went along with the story. Defendant's argument that the State either intentionally or negligently failed to disclose what the witness did not say to Officer Chatman is absurd, particularly as everyone, Defendant, her husband, and sons, all co-defendants, were present when the alleged inconsistent and exculpatory statements were not made.

*Jarius Watson*

Defendant also contends the State failed to reveal that Jarius Watson was offered immunity for his testimony. Watson testified he was in the back seat of the vehicle driven by Sean Newton and heard a gunshot. Watson stated he had seen the gun on the console between the driver's seat and the passenger's seat, and it sounded like the driver of the car—whom, he testified, was Sean Newton—had shot the gun out the window. Watson was charged with obstruction of justice and inciting a riot as a result of his participation in the incident.

Defendant asserts Watson "reasonably expected that he would receive immunity if he testified at trial." Defendant asserts "[t]his sort of information should have been presented to the defense prior to trial. . . . [A]ny inducement or

perceived inducement for Watson's testimony is a bias that the jury, as triar [sic] of fact, should be made aware in determining his credibility as a witnesses."

At trial, during cross-examination, Watson stated:

Q. Okay. Now, have you spoken with your attorney about any type of deal in this case?

A. No, sir.

Q. Okay. Do you expect any kind of benefit for your testimony?

A. Yes, sir.

Q. What do you expect?

A. Immunity.

Q. Okay. So you got immunity?

. . . .

Q. Okay. When did you get that?

A. I'm not sure if I have it yet, but they was [sic] talking about it.

Q. Who was talking about it?

A. My lawyer and I.

. . . .

Q. And she told you that it's okay to testify, because you have immunity, that it won't be used against you?

A. No, sir.

Q. And she told you she got that from the DA's office?

A. No, sir. She just said she was talking to Ms. Jennifer about it. She didn't tell me if it's exact or nothing like that.

Q. Who is Ms. Jennifer—Bellon?

A. I guess. The DA?

Q. She works at the DA's office?

A. Yes, sir.

Q. So your lawyer talked to Ms. Jennifer about immunity for you?

A. Yes, sir.

Q. And in return, what did she say would happen with the immunity?

A. She didn't tell me nothing. She—like she—

Q. She just said she had a conversation with Jennifer about immunity?

A. Yes, sir.

Q. And in return, that encouraged you to testify?

A. Yes, sir.

Q. And isn't it true, Jarius, that you expect your charges to be dropped, don't you?

A. Yes, sir.

Q. And you got that expectation from your lawyer, correct?

A. Yes, sir.

Q. And your lawyer got that expectation from the DA's Office, correct?

A. Yes, sir.

During redirect examination, the witness stated no one from the district attorney's office made any promises to him regarding immunity in exchange for his testimony. He agreed he was at trial pursuant to a subpoena. He stated, shortly before trial, he and his attorney met with Ms. Bellon. He further stated:

Q. Did she—at any time, did Ms. Bellon say anything about giving you any immunity or any promises?

A. No, sir.

Q. Okay. Okay. That's just what you're hoping for in connection with this case?

A. Yes, sir.

It is well-settled jurisprudence in Louisiana that a witness's hope he might receive leniency from the state may be highly relevant to establish bias or interest, even though he has made no agreements with the state regarding the conduct. *State v. Sparks*, 88-17 (La. 5/11/11), 68 So.3d 435, *cert. denied,* ___U.S. ___, 132

S.Ct. 1794 (2012). In *Sparks*, the defendant alleged the state had withheld information regarding the benefits its witness received for her testimony. It was learned during the murder trial the witness testifying against the defendant had several theft charges pending and had violated her parole, yet her parole was not revoked. It was later learned she received a Crime Stoppers reward of three hundred dollars for her testimony against defendant. The supreme court noted:

> The *Brady* rule encompasses evidence which impeaches witness testimony when the reliability or credibility of that witness may determine guilt or innocence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *State v. Knapper*, 579 So.2d 956, 959 (La.1991). *Brady* also requires the disclosure of evidence concerning a promise of leniency or immunity to a material witness in exchange for his testimony at trial. *Giglio v. United States*, 405 U.S. 150, 154-155, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).
>
> Moreover, to the extent exposure of a witness's motivation is a proper and important function of the constitutionally protected right of cross-examination, a witness's "hope of knowledge that he will receive leniency from the state is highly relevant to establish his bias or interest." *State v. Brady*, 381 So.2d 819, 822 (La.1980) (collecting cases); *State v. Vale*, 95-577, p. 4 (La.1/26/96), 666 So.2d 1070, 1072. A witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the State regarding his conduct. *Vale*, 666 So.2d at 1072; *State v. Nash*, 475 So.2d 752, 755-756 (La.1985); *see also State v. Bailey*, 367 So.2d 368, 371 (La.1979) (When circumstances indicated the witness might have received the impression that testimony favorable to the State would result in dropping of charges against him, defendant was entitled to new trial where information was not revealed.)

*Id.* at 485-86.

In brief, the State argues Watson's attorney's request for immunity from the State's investigator, Jennifer Bellon, was not the same as a promise of immunity as she did not have the authority to agree to immunity in this case. After the defense rested, Assistant District Attorney Cynthia Killingsworth advised the trial court she never offered immunity to Watson in exchange for his testimony. However, it was not clear from Watson's testimony whether the investigator ever actually indicated to him directly there may be a possibility of immunity. In *Sparks*, at the hearing

for a new trial, the assistant district attorney testified he was not aware of the witness's theft charges. He further testified she was not arrested because of the structure of the "bad check program" in their office. The supreme court noted:

> [B]ecause the District Attorney's office is charged with knowledge available to all acting on the State's behalf in the case, *Strickler* [*v. Greene*], 527 U.S. [263] at 281, 119 S.Ct. [1936] at 1948 [(1999)], he has the duty to timely disclose "favorable evidence to provide the defense with adequate opportunity to present the material effectively in its case." *State v. Kemp*, 2000-2228, p. 7 (La.10/15/02), 828 So.2d 540, 545. Here, whether or not the prosecutors knew about the pending charges and attachment, this still constituted impeachment evidence regarding Ms. Broadway's credibility and motivation to cooperate with the State. Thus, defendant has satisfied the first *Strickler* factor requiring the evidence have impeachment value.

*Id.* at 487.

The *Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936 (1999), factors referred to in *Sparks*, when determining whether a *Brady* violation undermines confidence in the outcome of the trial, are: "1) favorable (impeaching or exculpatory) evidence; 2) that must have been withheld; and 3) prejudice must have been caused thereby." *Sparks,* 68 So.3d at 486. In the current case, while there may have been nondisclosure of impeachment evidence, as in *Sparks*, the nondisclosure did not rise to the level of materiality necessary to establish prejudice sufficient to undermine confidence in the outcome of the trial. As noted in *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985), evidence is material under *Brady* only if there is a reasonable probability that the result of the proceeding would have been different had the alleged impeachment evidence been disclosed. In the current case, Watson's testimony was effectively corroborated by the testimony of Andre Broussard, who was also in the car with Sean Newton the night of the shooting. At the time of trial, Broussard's felony charge of inciting a riot was still pending, and he testified, though he hoped for leniency from the State, he had not been offered anything in exchange for his testimony.

We find, even if Watson had received the impression he might gain leniency or immunity for his testimony, Defendant failed to show disclosure of this information would have altered the outcome of her trial.

*Terri Brown*

Defendant argues the State withheld from her a statement made by a witness telling where she saw the car Sean Newton was driving that night when parked at the mall. Detective Kevin Kirkum, a sergeant with the Lake Charles Police Department, testified Terri Brown had originally pointed out to the police where she saw Newton's vehicle parked at the mall. However, a surveillance video utilized by the mall showed the vehicle in a different location than where Brown said she saw the car. Defendant argues this inconsistent information was never turned over to the defense prior to trial; accordingly, the defense was prejudiced by not being able to properly investigate the inconsistency.

We note Defendant does not explain how this inconsistent statement of Brown is exculpatory. Furthermore, the inconsistency was disclosed to Defendant in the State's "Response to Defendant's Motion for Discovery and Inspection" filed on August 16, 2010. In paragraph 6 of the response, the State reported "[W]hen T.B., age 16, showed detective where she remembered the car being parked, it was different from the area of the parking lot where Det. Thomas saw the defendants enter their vehicle and wrote down the license plate number." As noted above, evidence is material and reversal warranted only if it is reasonably probable the result of the proceeding would have been different had the evidence been disclosed to the defense. *State v. Marshall,* 81-3115, 94-461 (La. 9/5/95), 660 So.2d 819. Defendant has failed to show how this inconsistency would have changed the outcome of the trial. Three eyewitnesses, who were in the car with Sean Newton, testified he fired into the crowd of men. As a result, an innocent bystander, a fourteen-year-old girl, was shot in the head and killed. Lambert and

Officer Chatman each testified regarding the lies Defendant told to the police, and Lambert testified as to Defendant's actions to destroy evidence. It is extremely doubtful the fact a witness described the car parked in a different location than what was seen on the mall's surveillance video—a fact that the jury did hear— would have changed the outcome of Defendant's trial.

Finally, as pointed out by the State, these alleged inconsistent or biased statements had little to do with the charges filed against Defendant. Regardless of the guilt or innocence of her co-defendants, the evidence was overwhelming she actively sought to cover up alleged crimes committed by her sons which resulted in the death of an innocent child.

This assignment of error is meritless.

## *Assignment of Error Number Two*

In this assignment, Defendant argues her sentences, totaling ten years of imprisonment, are constitutionally excessive. She argues the trial court failed to consider several mitigating factors that "inure to the benefit of Nina Newton's sentence." As noted above in the errors patent discussion, the sentence of five years imposed on the conviction for accessory after the fact was found to be indeterminate, and that sentence will be vacated and the matter remanded to the trial court for further proceedings. Accordingly, we will review only the sentence of ten years imposed on the conviction for obstruction of justice.

The penalty provision of La.R.S. 14:130.1, obstruction of justice, provides, in pertinent part, as follows:

> B. Whoever commits the crime of obstruction of justice shall be subject to the following penalties:

> (1) When the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed, the offender shall be fined not more than one hundred thousand dollars, imprisoned for not more than forty years at hard labor, or both.

In the current case, the criminal proceeding was for first degree murder. The punishment for the offense of first degree murder is either life imprisonment or death. La.R.S. 14:30(C).

Defendant was sentenced on September 19, 2011. At the sentencing hearing, she argued there were substantial factors which tended to excuse or justify her action and pointed out that her conduct neither caused nor threatened serious harm. She argued she was a first time felony offender, that her criminal conduct was unlikely to reoccur, and that the ten-year sentence was grossly out of proportion to the severity of the crime. The State argued not only did Defendant lie to the police to throw off their investigation into the death of an innocent child, but she took evidence, the gun, and destroyed it. She was sentenced to one fourth of the potential maximum sentence—ten years.

Defendant then filed a "Motion to Reconsider Sentence." At the hearing on the motion, Defendant made the same argument she made at the sentencing hearing. However, the trial court did not agree that her actions were justified because of her "maternal instincts" and noted that her actions were not likely to reoccur because her son would be imprisoned for the rest of his life. The trial court stated the term of imprisonment was both a punishment and a deterrent, as was the purpose of the legislature when it enacted the obstruction of justice statute and put a range of imprisonment up to forty years in a situation where a death occurred.

This court discussed the standard of review applicable to claims of excessiveness in *State v. Guzman,* 99-1753, 99-1528, p. 15 (La. 5/16/00), 769 So.2d 1158, 1167 (citations omitted), as follows:

> A sentence which falls within the statutory limits may be excessive under certain circumstances. To constitute an excessive sentence, this Court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and[,] therefore, is nothing more than the needless imposition of pain and suffering. The trial judge has broad

discretion, and a reviewing court may not set sentences aside absent a manifest abuse of discretion.

Furthermore, in *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, this court discussed the factors it would consider in order to determine whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith,* 99-0606 (La. 7/6/00); 766 So.2d 501.While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La. App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

In *State v. Newton*, 42,743 (La.App. 2 Cir. 12/19/07), 973 So.2d 916, *writ denied*, 08-1147 (La.1/16/09), 998 So.2d 90, (a case unrelated to the current Defendant) the defendant and her husband apparently concocted a scheme to collect insurance money after they torched their home. However, the husband died as a result of the activity. The defendant was ultimately convicted of obstruction of justice. She was originally sentenced to ten years imprisonment, but after she was adjudicated a second time felony offender, she was sentenced to fifteen years imprisonment.

In *State v. McKnight,* 98-1790 (La.App. 1 Cir. 6/25/99), 739 So.2d 343, *writ denied*, 99-2226 (La. 2/25/00), 755 So.2d 247, the appellate court did not find the defendant's maximum sentence of forty years for obstruction of justice excessive under the circumstances. While McKnight was babysitting, the baby died for whatever reason. The defendant disposed of the baby's body in a river. She encouraged her young son to lie regarding the disappearance of the baby. While

the court acknowledged the defendant was a first time felony offender, they found the fact that the defendant allowed hope of finding the child alive by not revealing what happened was heinous enough to merit a maximum sentence in this case.

In *State v. Zachary,* 07-678 (La.App. 1 Cir. 12/26/07), 973 So.2d 176, *writ denied,* 08-634 (La. 11/21/08), 995 So.2d 631, *cert. denied,* 556 U.S. 1183, 129 S.Ct. 2003 (2009), the defendant, convicted of obstruction of justice, helped her boyfriend dispose of the body of the person he murdered. She received twenty years after she was adjudicated a second felony offender.

Finally, in *State v. Uloho*, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, *writ denied*, 04-1640 (La. 11/19/04), 888 So.2d 192, *and writ denied*, 08-2370 (La. 1/30/09), 999 So.2d 753, Uloho received twenty-five years as a second time felony offender and alleged the sentence was excessive. The underlying conviction was obstruction of justice. After being apprehended as a suspect in a bank robbery, she hid two bags of money in the back of a police car. While a police car is routinely searched after a suspect is transported, in this case, the bags of money were not located. Later, the defendant told other police officers she saw the transporting officer remove two bags from the getaway vehicle and put them under the front seat of his vehicle. After the bags were located, the officer was falsely implicated in the robbery.

In the current case, we cannot say the trial court abused its vast discretion when it sentenced Defendant to ten years imprisonment. As in *McKnight*, she encouraged her sons and nephew to lie to the police. Her "justification" was to protect her son from the consequences of killing a child after shooting a gun into a crowd of people. We do not find the sentence of ten years imprisonment under the circumstances of this case is so disproportionate to the offense as to shock this court's sense of justice. Therefore, we find no merit to this assignment of error.

**DECREE**

For the foregoing reasons, Defendant's convictions are affirmed. Defendant's sentence imposed on the conviction for obstruction of justice is affirmed. Defendant's sentence for accessory after the fact to first degree murder is vacated and the case remanded for resentencing with the trial court instructed to specify whether the sentence is to be served with or without hard labor. The trial court is directed to inform Defendant of the prescriptive period for filing an application for post-conviction relief as required by La.Code Crim.P. art. 930.8 at resentencing.

**CONVICTIONS AFFIRMED; SENTENCE FOR ACCESSORY AFTER THE FACT TO FIRST DEGREE MURDER VACATED AND REMANDED FOR RESENTENCING WITH INSTRUCTIONS.**