STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-579


STATE OF LOUISIANA

VERSUS

ERNEST RAY WILLIAMS


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 315-582
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

**********

**JOHN E. CONERY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, John E. Conery, and D. Kent Savoie, Judges.


**AFFIRMED IN PART, AMENDED IN PART, VACATED IN PART, AND
REMANDED.**

**Phillip Terrell**
**District Attorney – Ninth Judicial District Court**
**Numa V. Metoyer, III**
**Assistant District Attorney**
**Post Office Box 1472**
**Alexandria, Louisiana  71309**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**Carey J. Ellis, III**
**Louisiana Appellate Project**
**Post Office Box 719**
**Rayville, Louisiana  71269**
**(318) 728-2043**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Ernest Ray Williams**

**CONERY, Judge.**

On January 28, 2016**,** Defendant, Ernest Ray Williams, was convicted by a jury of attempted second degree murder, a violation of La.R.S. 14:27 and 14:30.1, and theft of a firearm, a violation of La.R.S. 14:67.15.  Defendant had also been charged with, but acquitted of, cruelty to animals, a violation of La.R.S. 14:102.1(B).

On March 22, 2016, the trial court sentenced Defendant to twenty-five years on the attempted second degree murder conviction and to ten years on the theft of a firearm conviction, to be served concurrently.  Defendant objected to his sentences and timely filed a written motion to reconsider sentence.  The trial court overruled the objection and denied the motion.

On appeal, Defendant asserts two assignments of error.  Defendant challenges the sufficiency of the evidence on both convictions and argues that his sentences are excessive.

## FACTS AND PROCEDURAL HISTORY

After a history of alleged domestic abuse, Defendant and his wife, Patricia Tolbert (also known as Patricia Williams), became estranged.  Patricia was living in an apartment on her family's property (herein referred to as "the Tolbert's residence").  On May 12, 2013, Defendant's sister and brother dropped Defendant off at a call tower where he claimed he needed to be to make his way to an upcoming job.  When exiting his sister's vehicle, Defendant grabbed a duffle bag he had placed in the back of the vehicle.  Shortly after Defendant's sister and brother dropped Defendant off at the call tower, his sister found two suicide notes in her vehicle.  One of the suicide notes was addressed to Defendant's brother and the other to Defendant and Patricia's son.  Defendant's sister and brother contacted

police and informed them that they believed Defendant was going to hurt himself and that they had reason to believe he was going to hurt Patricia, too. Defendant's sister and brother told police that Defendant believed Patricia was going to serve him with divorce papers, and he stated to them, "like I said when we was married, to death do us part and that's how it's going to be."

Deputies were dispatched to the Tolbert's residence, where Patricia was staying in an apartment behind the main house. As the deputies were making their way to Patricia's apartment, they noticed movement in a work shed that was close in proximity to Patricia's apartment. There in the work shed, deputies found Defendant dressed in camouflage with a stolen AR-15 assault rifle and two fully loaded thirty-round clips. Defendant also had multiple boxes of ammunition beside him. The doorway to Patricia's apartment faced the front of the Tolbert's residence in such a way that had she exited her apartment, she would have been in the line of fire from where Defendant was armed in the work shed with his stolen rifle. Defendant had been lying in wait in the work shed for roughly six hours. Defendant surrendered to the deputies, and they secured the rifle and ammunition. Defendant admitted to the deputies that he had shot a dog in a field on his way to Patricia's apartment (presumably to test how the gun functioned).

The serial number on the rifle indicated that the rifle in Defendant's possession belonged to Phillip Hunter. Defendant had been hired as a handyman at Mr. Hunter's law firm. The rifle had been stolen from Mr. Hunter's law firm and defendant replaced it with a fake gun that had been painted black by Defendant to conceal his theft. Following Defendant's arrest, the deputies knocked on the door of Patricia's apartment. Patricia answered the door and stated that she had not left

the apartment in the last six hours, and she had no knowledge that defendant was in the work shed armed with an assault rifle.

A jury found Defendant guilty of attempted second degree murder and theft of a firearm. Defendant was sentenced to twenty-five years for attempted second degree murder and ten years for theft of a firearm, to be served concurrently. Defendant appeals his convictions and sentences. For the following reasons, we affirm in part, amend in part, vacate in part, and remand in part.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find two errors patent concerning Defendant's sentences.

Louisiana Revised Statute La.R.S. 14:27 provides, in pertinent part:

D. Whoever attempts to commit any crime shall be punished as follows:

(1)(a) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence.

Further, La.R.S. 14:30.1 provides, in pertinent part:

B. Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

At sentencing, the trial court used the following language when sentencing Defendant:

I haven't heard any remorse, you know, and so, for the Theft of a Firearm, I'm sentencing you to 10 years[, and] for the Attempted Second Degree Murder, I'm sentencing you to 25 years. Those will run concurrently and you shall receive credit for time served. And this is a crime of violence.

3

As to Defendant's sentence for attempted second degree murder, the trial judge made no mention of the statutorily mandated language that the sentence was to be served at hard labor without benefits. On its face, the sentence is illegally lenient. However, because it is mandatory for Defendant's sentence to be served at hard labor and without benefit of parole, probation, or suspension of sentence as provided by La.R.S. 14:27 and La.R.S. 14:30.1, we amend Defendant's sentence to provide that the sentence for attempted second degree murder is to be served at hard labor without benefit or parole, probation, or suspension of sentence. *See State v. Matthew*, 07-1326 (La.App. 3 Cir. 5/28/08), 983 So.2d 994, *writ denied*, 08-1664 (La. 4/24/09), 7 So.3d 1193.

Second, the trial court did not specify whether Defendant's sentence for theft of a firearm is to be served with or without hard labor. Louisiana Revised Statutes 14:67.15 provides, in pertinent part, "For a first offense, the penalty for theft of a firearm shall be imprisonment with or without hard labor for not less than two years nor more than ten years, without the benefit of probation, parole, or suspension of sentence and a fine of one thousand dollars." Because the trial court did not specify whether the sentence for theft of a firearm was to be served with or without hard labor and such is optional by statute, Defendant's sentence for theft of a firearm is indeterminate. Likewise, the statutorily required language that "without the benefit of probation, parole or suspension of sentence and a fine of one thousand dollars" was not imposed. Louisiana Code of Criminal Procedure Article 879 requires the imposition of a determinate sentence. Therefore, we find that Defendant's sentence for theft of a firearm should be vacated, and the case remanded for resentencing with the trial court being instructed to specify whether the sentence is to be served with or without hard labor and to specify that the

sentence be imposed without the benefit of probation, parole or suspension of

sentence and a fine of one thousand dollars as required by the statute. *See id; State*

*v. Newton*, 12-541 (La.App. 3 Cir. 2/13/13), 129 So.3d 25. *See Matthew*, 983

So.2d 994.

## ASSIGNMENT OF ERROR ONE

In Defendant's first assignment of error, he challenges the sufficiency of the

evidence on both of his convictions.

> The standard of appellate review for sufficiency of the evidence claims is well-settled. In *State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86, the supreme court reiterated that standard, stating:
>
>> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Mussall*, 523 So.2d 1305 (La.1988). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. *State v. Silman*, 95-0154 (La. 11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. *State v. Bordenave*, 95-2328 (La. 4/26/96), 678 So.2d 19, 20. It is not the function of an appellate court to assess credibility or re-weigh the evidence. *Id.*

*State v. Richardson*, 16-107, p. 2 (La.App. 3 Cir. 12/28/16), ___ So.3d ___, ___.;

State v. Kennerson, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

### *Theft of a Firearm*

Louisiana Revised Statutes 14:67.15 defines theft of a firearm as, "the

misappropriation or taking of a firearm which belongs to another, either without

the consent of the other to the misappropriation or taking or by means of fraudulent

5

conduct, practices, or representations. An intent to deprive the other permanently of the firearm is essential."

At trial, Phillip Hunter, a lawyer with the law firm of Hunter and Beck, testified he employed Defendant to do a remodeling job for his law office. Defendant had a key to the office. After defendant's arrest and the seizure of the assault rifle in his possession, an officer from the sheriff's office contacted Mr. Hunter and asked him if he was the owner of an AR-15 rifle and informed him of the serial number of the rifle. The officer advised Mr. Hunter the rifle had been used in a crime. Mr. Hunter and the officer went to Mr. Hunter's law office to see if his rifle was there. At his office, Mr. Hunter discovered his rifle had been replaced with a plastic rifle, also described as a paintball gun, which Defendant had painted to look similar to the assault rifle that was taken and recovered from defendant. Mr. Hunter testified that Defendant did not ask to use the rifle, and he did not give the Defendant permission to use it.

Defendant admitted to Deputy Stephen Cloessner that he had stolen the rifle from the law firm of Hunter and Beck. Further, Defendant presented no testimony or evidence that he was going to return the rifle.

Therefore, viewing the evidence in the light most favorable to the prosecution, we find that the State presented sufficient evidence to convict the Defendant of theft of a firearm.

### Attempted Second Degree Murder

In challenging the sufficiency of the evidence on his attempted second degree murder conviction, Defendant argues the State failed to prove he had specific intent to kill the victim. Louisiana Revised Statutes 14:27 provides, in pertinent part (emphasis added):

6

A. Any person who, having a specific intent to commit a crime, *does or omits an act for the purpose of and tending directly toward the accomplishing of his object* is guilty of an attempt to commit the offense intended; and *it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose*.

B. (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but *lying in wait with a dangerous weapon with the intent to commit a crime*, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, *shall be sufficient to constitute an attempt to commit the offense intended*.

Our supreme court has provided, "It is the intent to commit the crime, not the possibility of success, that determines whether the act or omission constitutes the crime of attempt." *State v. Smith*, 94-3116, p. 3 (La. 10/16/95), 661 So.2d 422, 44.

Further, La.R.S. 14:30.1 states:

A. Second degree murder is the killing of a human being:

(1) When the offender has the specific intent to kill or to inflict great bodily harm[.]

In *State v. George*, 09-143, pp. 4-5 (La.App. 3 Cir. 10/7/09), 19 So.3d 614, 618, the court explained, in pertinent part:

The essential elements of the crime of attempted second degree murder are a specific intent to kill the victim and the commission of an overt act that tends toward the accomplishment of the victim's death. La.R.S. 14:30.1; *State v. Hollingsworth*, 42,317 (La.App. 2 Cir. 8/15/07), 962 So.2d 1183.

Further, our court has explained:

Reading the pertinent parts of these articles together, the state in this case had the burden of proving that the defendant had the specific intent to kill and did an act for the purpose of and tending directly toward accomplishing it. *State v. Butler*, 322 So.2d 189 (La.1975); State v. Guin, 444 So.2d 625 (La.App. 3 Cir.1983). Specific criminal intent has been statutorily defined as the state of mind which exists when circumstances indicate that the offender actively desired the proscribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Since specific intent is a state of mind, it need not be proven as a fact, but rather may be inferred from the circumstances and the actions of the defendant. *State v. Graham*, 420 So.2d 1126 (La.1982).

*State v. Hongo*, 625 So.2d 610, 613 (La.App. 3 Cir. 1993), *writ denied*, 631 So.2d 1163 (La.1994).

Patricia testified that she and Defendant were married for twenty-five years. In June 2010, she was no longer living with Defendant. Patricia testified that she and Defendant divorced in 2013 or 2015; she could not recall the exact year. Patricia testified to several occasions throughout her relationship with Defendant where he threatened her life.

As analyzed above, the evidence before us indicates that Defendant began his preparation for the crimes at issue when he was doing work at Mr. Hunter's law firm. Defendant's first overt act tending toward accomplishing Patricia's murder occurred when he stole the rifle. Defendant continued committing overt acts by procuring a large amount of ammunition for the rifle. Defendant prepared suicide notes and arranged with his brother and sister to be dropped off at a location in close proximity to the Tolbert's residence, where Patricia was living in an apartment on the property. He expressed directly to his sister and brother that he believed Patricia was going to serve him with divorce papers and stated, "like I said when we was married, to death do us part and that's how it's going to be."

Defendant concealed the rifle and ammunition in a tote bag, which he grabbed when he got out of his sister's vehicle. He walked across a field, where he shot a dog, and secreted himself in a shed with an open line of sight to Patricia's front door with the rifle fully loaded and ready for firing, with plenty of additional ammunition at hand. He was "lying in wait with a dangerous weapon" for over six (6) hours.

Brian Laborde, employed as a deputy with the Rapides Parish Sheriff's Office, testified at trial that he was dispatched to the Tioga substation on a report for a "welfare concern." The officer explained the Defendant's sister and brother came to the Tioga sheriff's office substation concerned about their brother. When the State asked Deputy Laborde what was their concern, he responded, "Their concern was they found that Mr. Ernest (defendant) had made threats to kill himself along with his wife." Officer Laborde related that Defendant's sister and brother recalled that Defendant believed that Patricia was going to serve him with divorce papers and he recalled that they relayed defendant's threat to him, "like I said when we was married, to death do us part and that's how it's going to be."

The two suicide notes that the defendant had left were admitted into evidence at trial and read to the jury by Detective Hans Desselle, a deputy employed by the Rapides Parish Sheriff's Department. The first note was addressed to Mr. Williams, the Defendant's brother. Detective Desselle read as follows:

> Curtis, help Dustin and look after him. I love you and thanks for standing by me. Get a lawyer and get Dustin whatever he has coming from the Tolberts. Also see about suing Lafayette Behavioral Health Unit for releasing me in this shape. I love you. Look after my son.

The second suicide note was addressed to the Defendant's son, Dustin. Detective Desselle read the note to the jury stating as follows:

> I wish I could have been a better father, but I did my best. I love you. Twenty-five years I loved your mother and she drove me insane. I wish I had died before I hurt you and you turned against me. I loved you both. Please understand. I hope someday you can find it in your heart to forgive me. I love you. Love, your dad.

Detective Desselle testified that he was sent to re-photograph the scene on January 6, 2016, by the Rapides Parish District Attorney's Office. These photos,

which were contained on a disc, were introduced into evidence and shown to the jury. One of the photographs indicated the larger shop or shed (herein referred to as "work shed") was located next to the small single home referred to as an "apartment" (herein referred to as "Patricia's apartment"), and the shed was built a little behind the apartment. When asked, "would the victim have been in a position to see defendant when she exited the guest quarters[,]" the detective responded, "He would have been behind her."

Deputy Jason Little with the Rapides Parish Sherriff reported to the Tolbert's residence on the day of the events in question. Deputy Little testified at trial as to the scene in the work shed:

> Q Okay. And was there anything significant about where it (the rifle) and the chair were positioned?
>
> A Yes. From where the chair and the rifle [were] positioned, you could actually see the way it was slanted, you could actually see the opening - the front door if the door opened to that apartment.
>
>     . . . .
>
> A The chair and the rifle were positioned at an angle to where if you looked out of the door, you could see the door to the apartment open - or the opening - front part of the apartment.
>
> Q Okay. You could see the front part of the apartment open. Okay. So and that's the apartment where whom was staying?
>
> A Ms. Williams.
>
> Q Okay. If Ms. Williams was to exit the apartment, would she have seen where the chair and the rifle were - that area - could she see it?
>
> A I don't think she - not without - the way the door opened, I don't believe so. I don't know.
>
> Q Okay. All right. Did you find it significant in terms of where the chair was placed? Was that significant to you?
>
> A Yes. Yes, sir.

Q  Okay. And what was that significant to you?

A  Because the way the angle was set - I mean, it was a perfect spot to see the front door of that apartment if anybody came in and out of it.

Counsel for the defendant raised the question that the evidence pointed only to an attempted suicide by defendant and was insufficient to prove attempted second degree murder.

During the pat down related to the arrest, Deputy Cloessner, who was dispatched to the Tolbert's residence along with Deputy Little, testified that he found cigarettes, a flashlight, two loaded magazines, an unloaded AR-15 magazine, and four boxes of .223 bullets for the AR-15 rifle in Defendant's possession.  During direct examination, the State asked the officer, "Would he need ninety rounds of ammunition to commit suicide[,]" and the officer responded, "He'd have to be a very bad shot."

Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have inferred from the circumstances and actions of Defendant presented at trial that Defendant desired the criminal consequences of his acts had Patricia walked out of her apartment.  He was there to murder Patricia and then kill himself.  The fact that he was stopped by the deputies before actually accomplishing his purpose is "immaterial."  La.R.S. 14:27(A).  Defendant's lying in wait for the specific intent to murder Patricia can be clearly inferred from Defendant's statements to his family about his marriage and its permanence, his stated desire to kill Patricia, and the overt acts of obtaining the gun and ammunition, getting a ride with his sister and brother wherein he voiced his intention to kill Patricia, writing the notes, and concealing himself in the work shed for six hours with the rifle and copious amounts of ammunition at his side.  He

11

extensively prepared for his intended crimes and proceeded to lie in wait with a dangerous weapon for six hours. Fortunately, he was stopped by the deputies before Patricia walked out of her apartment, and he had the chance to murder Patricia. We find that the State satisfied its burden of proving the essential elements of attempted second degree murder beyond a reasonable doubt. We affirm the jury's verdict convicting defendant of attempted second degree murder.

## ASSIGNMENT OF ERROR NUMBER TWO:

Defendant challenges both of his sentences as excessive. Defendant properly filed a motion to reconsider sentence in the trial court, which was denied.

As stated above, due to Defendant's sentence for theft of firearm being indeterminate and failing to impose parole restrictions and a $1,000.00 fine, we vacate Defendant's sentence for theft of a firearm and remand to the trial court for imposition of a determinate sentence with the statutorily required conditions.

For the following reasons, we affirm as amended, Defendant's sentence for attempted second degree murder.

> The law is well-settled regarding the standard to be used in reviewing excessive sentence claims:
>
>> [Louisiana Constitution Article 1], § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

12

> State v. Barling, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01),
> 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d
> 331 (citations omitted).

*State v. Daugherty*, 15-400, p. 3 (La.App. 3 Cir. 10/7/15), 175 So.3d 1164, 1166-67. Further, even if a defendant's sentence falls within the statutory sentencing range, the sentence may still be vacated as unconstitutionally excessive.

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

> State v. Smith, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03–562 (La.5/30/03), 845 So.2d 1061 (citations omitted). "[T]he trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1[;] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." State v. Smith, 433 So.2d 688, 698 (La.1983) (citing State v. Ray, 423 So.2d 1116 (La.1982); State v. Keeney, 422 So.2d 1144 (La.1982); State v. Duncan, 420 So.2d 1105 (La.1982)). "The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." La.Code Crim.P. art. 881.4(D).

*Id.* at 1167.

At sentencing, the trial court considered Defendant's lack of a criminal history and that he was a law-abiding citizen (except for the fact that he had threatened and stalked his wife in the past). However, the trial court repeatedly reiterated that Defendant did not show remorse for his actions. It is clear from what was stated on the record at Defendant's sentencing that the trial court knew

Defendant did not have a criminal record, but his actions demonstrated that he could not be trusted in the community and that he might commit a similar offense with potentially life-threatening consequences. The trial court stated:

> I don't know that you're, that you've moved forward on this. I, you're still defending your actions. You're not showing remorse. . . .I have to consider that because we have the victim out there and her family and they continue to live in fear everyday because of what you put them through.

In *State v. Leger*, 16-240 (La.App. 3 Cir. 11/2/16) (unpublished opinion) and *State v. Breaux*, 15-1004 (La.App. 3 Cir. 5/4/16) (unpublished opinion), this court recently upheld the maximum sentence for attempted second degree murder. In *Breaux*, the court reiterated that when evaluating the potential excessiveness of a sentence, the appellate court is to ask "whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate." *Breaux*, 15-1004, p. 7 (La.App. 3 Cir. 5/4/16) (unpublished opinion) (citing *State v. Cook*, 95–2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U .S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996)).

In the instant case, Defendant was exposed to a sentence of ten to fifty years without benefit of parole, probation or suspension of sentence for his conviction of attempted second degree murder. *See* La.R.S. 14:27; La.R.S. 14:30.1. Defendant was sentenced to a low to mid-range sentence of twenty-five years for attempted second degree murder. Considering the violent history of the couple, the many threats defendant had made to the victim, the nature of the offense, the circumstances and lack of remorse of the offender, the legislative purpose behind the punishment, and the comparison of sentences imposed for similar crimes, we find that Defendant's sentence was not excessive. We affirm Defendant's sentence for attempted second degree murder and amend the Defendant's sentence to

14

mandate that it is to be served at hard labor without benefit of probation, parole, or suspension of sentence.

## DISPOSITION

Defendant's sentence for theft of a firearm is vacated and remanded to the trial court for the imposition of a determinate sentence, either with or without hard labor, and to impose the statutory requirements that it be "served without the benefit of probation, parole or suspension of sentence and a $1,000.00 fine." For these reasons, we affirm Defendant's convictions. Defendant's sentence for attempted second degree murder is affirmed as amended.

**AFFIRMED IN PART, AMENDED IN PART, VACATED IN PART, AND REMANDED.**